UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                          :
CVI INVESTMENTS, INC.,                    :    Case No. 1:19-cv-02960
                                            :
                       Plaintiff,      :
                                            :
 -against-                                :
                                          :
STEVEN M. MARIANO,                :
                                            :
                      Defendant.    :
                                            :
                                            :
                                            :
-------------------------------------------------------------- x

## DEFENDANT STEVEN M. MARIANO'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Defendant Steven M. Mariano, through undersigned counsel and pursuant to Federal Rule

of Civil Procedure 12(b)(6), hereby files this memorandum of law in support of the motion to

dismiss for failure to state a claim simultaneously filed.

Dated: June 3, 2019                   Respectfully submitted,

*/s/ Michael E. Dutko, Jr.*                **--and--**
WILLIAM R. SCHERER
*Pro Hac Vice Application Forthcoming*        ERIC HAGER
wscherer@conradscherer.com            *Pro Hac Vice Application Forthcoming*
MICHAEL E. DUTKO, JR.               ehager@conradscherer.com
*Pro Hac Vice Application Filed*           CONRAD & SCHERER, LLP
mdutko@conradscherer.com              Edificio Officenter, Suite 304
CONRAD & SCHERER, LLP             Avenida Pampite S/N y Chimborazo -
633 South Federal Highway, 8th Floor     Cumbayá
Ft. Lauderdale, Florida 33301           Quito, Ecuador 179091
Phone: 954-462-5500                  Telephone:  (954) 622-0461
Fax: 954-463-9244                     Quito: +(593) 2-601-4261
                                       Facsimile:  (954) 463-9244

*Counsel for Defendant Steven M. Mariano*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................1

    I.     THE COURT SHOULD DISMISS THE TWO FRAUD CLAIMS........................1

          a.     The terms of the SPA and REA bar CVI's fraud claims. ............................1

          b.     The fraud claims are barred because the alleged misrepresentations are not extraneous to the SPA and REA. .....................................................3

          c.     The fraud claims are not pled with the particularity required by Rule 9(b). ...........................................................................................................5

          d.     CVI's fraudulent inducement claim fails because it cannot rely on representations Mariano made to Patriot. .....................................................6

          e.     CVI's common-law fraud claim fails because Mariano had no disclosure duty. .........................................................................................7

          f.     CVI's common-law fraud claim fails because puffery is not actionable fraud. ..........................................................................................................8

    II.    THE COURT SHOULD DISMISS THE CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT ...............................................................9

          a.     The economic-interest defense merits dismissal of the claim. ...................9

          b.     As a former officer and director of Patriot, Mariano cannot be liable for tortiously interfering with Patriot's contract where there is no allegation that he acted with malice and had the intent to impair Hudson Bay's business. ..........................................................................14

          c.     Mariano is not a stranger to the warrants..................................................15

CONCLUSION.....................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abele Tractor & Equip. Co. v. Schaeffer*,
    91 N.Y.S.3d 548 (App. Div. 3d Dep't 2018) ......................................................................... 13

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ...................................................................................................... 3

*Bausch & Lomb Inc. v. Mimetogen Pharm., Inc.*,
    2016 WL 2622013 (W.D.N.Y. May 5, 2016) ............................................................. 10, 11, 12

*City of Roseville Employees' Ret. Sys. v. Nokia Corp.*,
    2011 WL 7158548 (S.D.N.Y. Sept. 6, 2011) ......................................................................... 9

*Cohen v. Koenig*,
    25 F.3d 1168 (2d Cir. 1994) .................................................................................................... 8

*Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.*,
    887 F. Supp. 2d 459 (E.D.N.Y. 2012) ................................................................................... 11

*DynCorp v. GTE Corp.*,
    215 F. Supp. 2d 308 (S.D.N.Y. 2002) ..................................................................................... 4

*Elavon, Inc. v. Ne. Advance Techs., Inc.*,
    2017 WL 4876300 (S.D.N.Y. Oct. 27, 2017) ......................................................................... 6

*Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*,
    552 F. App'x 13 (2d Cir. 2014) ............................................................................................. 16

*Hallinan v. Republic Bank & Trust Co.*,
    2006 WL 1495232 (S.D.N.Y. Jun. 1, 2006) ......................................................................... 15

*Henneberry v. Sumitomo Corp. of Am.*,
    415 F. Supp. 2d 423 (S.D.N.Y. 2006) ..................................................................................... 8

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc. (Hudson Bay I)*,
    2016 WL 6906583 (S.D.N.Y. Nov. 21, 2016) ..................................................................... 15

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc. (Hudson Bay II)*,
    309 F. Supp. 3d 100 (S.D.N.Y. 2018) ................................................................................. 4, 5

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc. (Hudson Bay III)*,
    2019 WL 1649983 (S.D.N.Y. Mar. 28, 2019) .............................................................. passim

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
    679 F. Supp. 2d 395 (S.D.N.Y. 2009) ...................................................................... 9, 10, 14, 15

*Island Two LLC v. Island One, Inc.*,
   2013 WL 5380216 (S.D.N.Y. Sept. 26, 2013) ........................................................ 17

*Koret, Inc. v. Christian Dior, S.A.*,
   554 N.Y.S.2d 867 (App. Div. 1st Dep't 1990) ........................................................ 15

*Lorber v. Winston*,
   962 F. Supp. 2d 419 (E.D.N.Y. 2013) ...................................................................... 6

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
   244 F.R.D. 204 (S.D.N.Y. 2007) ......................................................................... 7, 8

*New Media Holding Co., LLC v. Kagalovsky*,
   985 N.Y.S.2d 216 (App. Div. 1st Dep't 2014) ...................................................... 17

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000) ................................................................................... 8

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*,
   894 F. Supp. 2d 288 (S.D.N.Y. 2012) ............................................................... 14, 15

*Savage v. Galaxy Media & Mktg. Corp.*,
   2012 WL 2681423 (S.D.N.Y. July 5, 2012) .......................................................... 13

*Sec. Inv'r Prot. Corp. v. BDO Seidman, LLP*,
   222 F.3d 63 (2d Cir. 2000) ..................................................................................... 7

*Solow v. Stone*,
   994 F. Supp. 173 (S.D.N.Y. 1998) ..................................................................... 14, 15

*Torchlight Loan Servs., LLC v. Column Fin., Inc.*,
   2012 WL 3065929 (S.D.N.Y. July 25, 2012) ..................................................... 2, 5, 6

*UBS Sec. LLC v. Highland Capital Mgmt., L.P.*,
   927 N.Y.S.2d 59 (App. Div. 1st Dep't 2011) ..................................................... 16, 17

*Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*,
   579 N.Y.S.2d 353 (App. Div. 1st Dep't 1992) ...................................................... 13

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgt., L.L.C.*,
   455 F. App'x. 102 (2d Cir. 2012) ........................................................................... 9

*Wells Fargo Bank, N.A. v. ADF Operating Corp.*,
   855 N.Y.S.2d 68 (App. Div. 1st Dep't 2008) ..................................................... 11, 12

*White Plains Coat & Apron Co. v. Cintas Corp. (White Plains I)*,
   460 F.3d 281 (2d Cir. 2006) ................................................................................... 9

*White Plains Coat & Apron Co. v. Cintas Corp. (White Plains II)*,
  8 N.Y.3d 422 (2007) ................................................................................................ 12, 13

*Wilmington Tr. Co. v. Burger King Corp.*,
  2005 WL 3199301 (N.Y. Sup. Ct. 2005) ................................................................. 13

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................................... 5

## INTRODUCTION

On April 13, 2016, Hudson Bay Master Fund, Ltd. ("Hudson Bay") sued Steven M. Mariano ("Mariano") and Patriot National, Inc. ("Patriot") in relation to a disastrous private investment in public equity transaction. The next day, CVI Investments, Inc. ("CVI") sued Patriot—but not Mariano. Not until nearly three years later did CVI choose to sue Mariano.

This decision not to sue Mariano for years points only to one conclusion: CVI has long realized that it has no valid claim against Mariano. And the unduly delayed nature of its complaint provides Mariano with a strong fact-based laches defense. But for present purposes, it only matters that, as a matter of law, CVI's complaint fails to state a claim for fraudulent inducement (Count I), common law fraud (Count II), and tortious interference (Count III). The complaint should be dismissed in its entirety so that Mariano can focus on his defense of the action brought against him by Hudson Bay, *see Hudson Bay Master Fund Ltd. v. Patriot National, Inc. et al. (Hudson Bay Action)*, Case No. 16 Civ 2767 (GBD) (S.D.N.Y. docketed Apr. 13, 2016).

Because the Court is well-versed in the facts of this case,[1] Mariano will not burden it with a summary of CVI's allegations; instead he will focus on the reasons why dismissal is warranted.

## ARGUMENT

**I.      THE COURT SHOULD DISMISS THE TWO FRAUD CLAIMS**

**a.      The terms of the SPA and REA bar CVI's fraud claims.**

CVI's two fraud claims (Counts I and II) turn on pre-transaction representations. *E.g.*, Compl. ¶ 204 ("Mariano made knowing misrepresentations of presently existing material fact intending to deceive CVII and to induce CVII into entering the initial transaction and the revised transaction, specifically the SPA and REA"). But the terms of the Securities Purchase Agreement

---

[1] Indeed, this case is so similar to the *Hudson Bay Action* that Mariano intends to seek consolidation of the two actions, unless the Court first dismisses this case.

("SPA"), *see* Dutko Decl., Exh. 1, and the Rescission and Exchange Agreement ("REA"), *see* Dutko Decl., Exh. 2, bar any fraud claims based on any earlier representations.[2]

Three provisions from the SPA and REA are relevant here. Section 9(e) of the SPA states that it and the related documents "supersede all other prior oral or written agreements," and that they "contain the entire understanding of the parties solely with respect to the matters covered herein and therein." Next, section 8(f) of the REA contains a similar provision. Finally, section 2(e) of the SPA states that CVI "has, in connection with [CVI's] decision to purchase Securities, not relied upon any representations or other information (whether oral or written) other than as set forth in the representations and warranties of the Company [Patriot] and the Selling Stockholder [Mariano] contained herein and the information disclosed in the SEC Documents."

In the *Hudson Bay Action*, this Court relied on such contractual provisions to indicate that pre-transaction representations could not form the basis for any contract claims. The Court held that the merger clause in section 9(e) of the SPA (quoted above) "clearly evidences the parties' intent to displace all 'prior oral or written agreements.'" *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc. (Hudson Bay III)*, 2019 WL 1649983, at \*7 (S.D.N.Y. Mar. 28, 2019). The Court also observed that "the parties manifested their intent to make the terms of the SPA the exclusive grounds upon which the Funds may be liable for transactions occurring during the SPA's negotiation." *Id.* at \*8. Using similar reasoning, the Court should find that the SPA contains "the

---

[2] Given CVI's heavy reliance on the SPA, REA, and Amended Back-to-Back Agreement in its Complaint, the Court may properly refer to those agreements in deciding Mariano's motion to dismiss. *Torchlight Loan Servs., LLC v. Column Fin., Inc.*, 2012 WL 3065929, at \*12 (S.D.N.Y. July 25, 2012) ("Documents extrinsic to the complaint can be considered as part of the pleadings if they are: (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint. To incorporate a document by reference, a plaintiff 'must make a clear, definite and substantial reference to the documents' in the Complaint. Further, for a court to treat an extrinsic document as integral to a complaint, the complaint must rely heavily upon the document's terms and effect.").

exclusive grounds upon which [Mariano] may be liable for [representations] occurring during the SPA's negotiation." *Id.*

The Second Circuit's opinion in *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) demonstrates why dismissal is warranted. There, the agreement at issue stated "that the only promises, restrictions, and warranties to the transaction were those set forth in the transaction documents." *Id.* at 105. Section 2(e) of the SPA is similar, stating that CVI has "not relied upon any representations . . . other than as set forth in the representations and warranties of the Company and the Selling Stockholder contained herein." Given that CVI is indisputably a sophisticated investor, the reasoning from *ATSI* clearly applies to bar its fraud claims:

> Where the plaintiff is a sophisticated investor and an integrated agreement between the parties does not include the misrepresentation at issue, the plaintiff cannot establish reasonable reliance on that misrepresentation.

493 F.3d at 105. Thus, as a matter of law, "to the extent [CVI's] causes of action are based on alleged misrepresentations made during negotiations preceding the . . . investment, those claims are barred by the merger clauses." *Id.*

In short, the terms of the SPA and REA, the Court's interpretation of them in *Hudson Bay III*, and the controlling *ATSI* decision bar CVI's fraud claims, and Counts I and II should be dismissed.[3]

      **b.**      **The fraud claims are barred because the alleged misrepresentations are not extraneous to the SPA and REA.**

In order to be actionable, the Court has held that misrepresentations must be "extraneous to the contract and involve a duty separate from or in addition to that imposed by the contract."

---

[3] In the *Hudson Bay Action*, Mariano and Patriot National argued that the NDA was not superseded by the SPA and REA (ECF No. 279). Nevertheless, Mariano recognizes the Court rejected this. *See Hudson Bay III*, 2019 WL 1649983, at *7. Mariano's argument contained herein is intended to conform to the Court's prior finding and ruling, but in no way should this position here be taken as Mariano abandoning his prior position in the *Hudson Bay Action*.

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc. (Hudson Bay II)*, 309 F. Supp. 3d 100, 115 (S.D.N.Y. 2018). Using that reasoning, the Court dismissed Mariano's fraud counterclaim in the Hudson Bay Action. *Id.* To be consistent, CVI's fraud claims deserve the same fate.

The complaint demonstrates that "the alleged misrepresentations and omissions are expressly addressed by the Transaction Documents." *Id.* For instance, whether Mariano and Patriot had the "willingness and ability to fulfill the terms of the REA and the New Warrants," Compl. ¶ 205, goes to the representation that Patriot's "obligation to issue the Warrant Shares . . . is absolute and unconditional." SPA § 3(a)(ix).[4] Similarly, whether Mariano's alleged fraud "caused CVII to purchase Patriot securities at artificially inflated prices," Compl. ¶ 218, goes to whether Mariano or Patriot took "any action designed to cause . . . the . . . manipulation of the price of any security of the Company . . . to facilitate the sale or resale of any of the Securities." SPA § 3(a)(xxxii).

CVI even went so far as to partly base its fraud claims on representations explicitly contained in the Transaction Documents. *See* Compl. ¶ 141 ("[E]ach of Patriot's representations in the SPA leading CVII to rely on Patriot's SEC filings were likewise false and misleading."); *see also* Compl. ¶ 136 (alleging misrepresentation in SPA § 3(a)(xiv)); *id.* ¶ 137 (alleging misrepresentation in SPA § 3(a)(xv)); *id.* ¶¶ 138-140. Such representations are plainly not extraneous. *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 325 (S.D.N.Y. 2002) ("DynCorp's claims of fraud also are not 'collateral or extraneous to the terms of the parties' agreement,' since the false representations that they allege are the representations and warranties that are provided in [the] Agreement."). Because CVI has not alleged misrepresentations by Mariano that are extraneous to the SPA and REA, it fails to state a claim for fraud, and Counts I and II should be dismissed.

---

[4] This and other provisions of section 3 of the SPA were carried over to the REA by way of section 4 of the REA.

CVI was obviously aware to this bar to its fraud claims, and tried to plead around it (at times). For instance, CVI alleges that "Mariano made knowing misrepresentations of presently existing material fact intending to deceive CVII." Compl. ¶ 204. "However, it is not sufficient that the alleged misrepresentations are about then-present facts; rather, they also must be 'extraneous to the contract and involve a duty separate from or in addition to that imposed by the contract.'" *Hudson Bay II*, 309 F. Supp. 3d at 115 (quoting *Torchlight*, 2012 WL 3065929, at *10). The alleged misrepresentations advanced by CVI are not extraneous to the SPA and REA, so they cannot support a claim for fraud against Mariano. *See Torchlight*, 2012 WL 3065929, at *10 (dismissing fraud claim where "the alleged misrepresentations are expressly addressed by contractual representations and warranties").

### c.       The fraud claims are not pled with the particularity required by Rule 9(b).

To satisfy Federal Rule of Civil Procedure 9(b), a complaint for fraud "must: (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." *Torchlight*, 2012 WL 3065929, at *10. The complaint does not plead the two fraud claims with sufficient particularity. CVI's failure to satisfy Rule 9(b) is particularly egregious considering it had the benefit of years of discovery from the *Hudson Bay Action*.

Rule 9(b) deficiencies litter the complaint. For instance, CVI alleges Mariano had "several discussions" with CVI's Martin Kobinger, but does not allege where and when those discussions occurred. Compl. ¶ 71. CVI also alleges Mariano "used promises regarding the terms and benefits of the New Warrants as a carrot to induce CVII to agree to revise the deal." *Id.* ¶ 98; *see also id.* ¶ 7 (alleging Mariano made "promises to CVII regarding the benefits to it of the new warrants"). Again, CVI does not allege where and when those "promises" were made. Similarly, CVI alleges

Mariano "made false and misleading statements in his negotiations with CVII" without alleging where and when he made those statements. *Id.* ¶ 208. And on a more basic level, given how CVI failed to allege the details concerning any of Mariano's alleged fraudulent statements,[5] the allegations fail to adequately "specify the statements that the plaintiff contends were fraudulent." *Torchlight*, 2012 WL 3065929, at *10; *see also Elavon, Inc. v. Ne. Advance Techs., Inc.*, 2017 WL 4876300, at *11 (S.D.N.Y. Oct. 27, 2017) (finding Rule 9(b) not satisfied where the plaintiff did "not state with specificity the content and details of the fraudulent communications"); *Lorber v. Winston*, 962 F. Supp. 2d 419, 446 (E.D.N.Y. 2013) (finding Rule 9(b) not satisfied where "the Amended Complaint provides no details as to the exact statements [the defendant] made").

### d.   CVI's fraudulent inducement claim fails because it cannot rely on representations Mariano made to Patriot.

A significant portion of CVI's fraudulent inducement claim (Count I) is premised on Mariano's representation "that he owned sufficient unencumbered shares to deliver to Patriot upon CVII's exercise of the New Warrants." Compl. ¶ 206. But, as CVI alleges, Mariano made this representation in the Amended Back-to-Back Agreement, an agreement between Mariano and Patriot to which CVI was not a party. *Id.* ¶¶ 93-94 (alleging Mariano "willfully and fraudulently misrepresented that he had sufficient unencumbered stock to satisfy his obligations to deliver shares owed to CVII under the warrants" and quoting Mariano's representation in Section 4.1 of the Agreement); *id.* ¶ 101 (citing Mariano's "representations under the amended stock back-to-back agreement").

CVI's allegations of misrepresentations based on the Amended Back-to-Back Agreement are defective. Put simply, and as alleged by CVI, Mariano did not make any representations **to**

---

[5] For instance, while CVI relies on supposed "promises" regarding the benefits of the warrants, *see* Compl. ¶¶ 7 & 98, it does not allege anything concrete about the content of those "promises."

**CVI** in the Amended Back-to-Back Agreement; he made them **to Patriot**. As the Court already held in the Hudson Bay Action, that was "a *separate* . . . Agreement between Mariano and Patriot." *Hudson Bay III*, 2019 WL 1649983, at \*19 (emphasis in original). Just as CVI cannot "create new obligations 'that were not expressly set forth'" in the Amended Back-to-Back Agreement, *id.*, CVI cannot change the intended recipient of Mariano's representations in that Agreement. Indeed, "no 'reasonable person in the position of [CVI] would be justified in understanding'" that Mariano made any representations to CVI in the Amended Back-to-Back Agreement. *Id.* Nor does CVI allege that Mariano intended that his representations to Patriot in that Agreement be conveyed to CVI. *Sec. Inv'r Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 71 (2d Cir. 2000) ("Under New York law, a plaintiff may state a claim for fraudulent misrepresentation made to a third party if he alleges that he relied to his detriment on the defendant's misrepresentation and that the defendant intended the misrepresentation to be conveyed to him.").

In addition, CVI is precluded from relying on Mariano's representations in the Amended Back-to-Back Agreement because it contains a no-third-party-beneficiary clause. Dutko Decl., Exh. 3, at § 5.6 ("No Third Party Beneficiaries or Other Rights. Nothing herein shall grant to or create in any person not a party hereto . . . any right to any benefits hereunder, and no such party shall be entitled to sue any party to this Agreement with respect hereto.").

> **e.    CVI's common-law fraud claim fails because Mariano had no disclosure duty.**

CVI's common-law fraud claim (Count II) is primarily based on allegations that Mariano concealed material facts from CVI. But this must fail as a matter of law because a fraud claim can be based on concealment only when "the defendant had a duty to disclose material information." *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007). The duty to disclose can arise in three situations: (1) when the defendant "has made a partial

or ambiguous statement"; (2) "when the parties stand in a fiduciary or confidential relationship with each other"; or (3) "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Id.*

Because CVI does not allege that any of these three situations applies here, CVI has failed to allege that Mariano had a duty to disclose, and the concealment-based part of the common-law fraud claim should be dismissed. (The parts of that claim based on affirmative misrepresentations should be dismissed for one or more of the other grounds for dismissal addressed in this motion.)

### f.    CVI's common-law fraud claim fails because puffery is not actionable fraud.

CVI's common-law fraud claim (Count II) also depends in substantial part on allegations of fraud concerning Patriot's "future prospects" and "outlook." Compl. ¶¶ 220-223. But the fraud claim as it relates to Patriot's future performance is based on nothing more than puffery. For instance, CVI alleges that Mariano misrepresented Patriot's financial outlook by making "rosy financial projections." *Id.* ¶ 103; *see also id.* ¶ 132 ("Mariano nonetheless caused Patriot to file with the SEC financial statements that painted a rosy picture of the Company's financial health").

Statements about Patriot's rosy prospects "are mere 'puffery'" that "will not form the basis of a fraud claim." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994); *see also Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 452 (S.D.N.Y. 2006) ("[S]tatements of puffery, or those concerning future expectations, are insulated from liability."). They are far from actionable statements like those that are "relatively concrete representation[s] as to a company's future performance." *Cohen*, 25 F.3d at 1172. Because CVI did not adequately allege that Mariano did "more than just offer rosy predictions," *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000), the common-law fraud claim—to the extent it relies on Patriot's future prospects—should be dismissed. *See City of Roseville Employees' Ret. Sys. v. Nokia Corp.*, 2011 WL 7158548, at *6

(S.D.N.Y. Sept. 6, 2011) ("[T]hese statements are insufficient because Plaintiff essentially accuses Defendants of offering too rosy a view of Nokia's future D & S business") (Daniels, J.).

## II.   THE COURT SHOULD DISMISS THE CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT

### a.   The economic-interest defense merits dismissal of the claim.

Normally, "[t]ortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgt., L.L.C.*, 455 F. App'x. 102, 104 (2d Cir. 2012). "Where the defendants have an economic interest in the contract, however, alleging the above elements is insufficient." *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 406 (S.D.N.Y. 2009). In such cases, the plaintiff must also show that the defendant "acted maliciously, fraudulently, or illegally." *Id.*; *see also White Plains Coat & Apron Co. v. Cintas Corp. (White Plains I)*, 460 F.3d 281, 286 (2d Cir. 2006) ("[T]he imposition of liability in spite of a defense of economic interest requires a showing of either malice on the one hand, or fraudulent or illegal means on the other.").

### 1.   There are no allegations of "malicious, fraudulent, or illegal" actions by Mariano.

The economic interest defense is tailor-made for a defendant, like Mariano, who is a significant stockholder in the entity (Patriot) that breached the contract.   "[I]t is clear that a concrete, pre-existing economic interest such as a high level of stock ownership will support a defense to the tort." *White Plains I*, 460 F.3d at 286 (recognizing a 25% ownership interest in the breaching party's business is sufficient to negate tortious interference claim); *IMG Fragrance Brands,* 679 F. Supp. 2d at 406 (defendants collectively owned 75% interest in breaching entities).

Therefore, because Mariano has an undisputed economic interest in Patriot, CVI cannot state a claim for tortious interference absent allegations that his procurement of Patriot's breach was malicious, fraudulent, or illegal. The complaint, however, fails to allege any such conduct by Mariano. CVI alleges only generally that Mariano "exerted dominion and control over Patriot and the Patriot Board to cause Patriot not to honor CVII's New Warrants." Compl. ¶ 190. More specifically, CVI alleges Mariano "procured a breach of the New Warrants by Patriot by, among other things, insisting that Patriot not honor the New Warrants and by not delivering shares to Patriot as required" under the Amended Back-to-Back Agreement. *Id.* ¶ 235. Absent are any allegations that Mariano "acted with malice or employed fraudulent or illegal means to procure [Patriot's] breach of contract." *Bausch & Lomb Inc. v. Mimetogen Pharm., Inc.*, 2016 WL 2622013, at *11 (W.D.N.Y. May 5, 2016).

Notably, CVI's allegations concerning its separate fraud claims, which are insufficient as a matter of law for the reasons discussed above in Part I, do not relate to Mariano's conduct in allegedly procuring Patriot's breach. Accordingly, the Court should dismiss the tortious interference claim. *IMG Fragrance Brands,* 679 F. Supp. 2d at 406-07 (dismissing tortious interference claim where plaintiff did not adequately allege malice, fraud, or illegality).

### 2. The Court applied the wrong standard in *Hudson Bay III* in determining Mariano could not rely on the economic-interest defense.

Mariano recognizes that the Court found that he could not rely on the economic-interest defense in the *Hudson Bay Action*. *E.g.*, *Hudson Bay III*, 2019 WL 1649983, at *16-17. But Mariano respectfully submits that the Court applied the wrong standard, which it formulated after discussing the following three cases.

First, in *Bausch & Lomb*, the economic-interest defense did not apply because the third-party defendant Valeant acted "to protect *its own expected interest in Allergan*, not to protect **its**

**interest in B+L**." 2016 WL 2622013 at *12 (second emphasis added). Allergan was not the breaching company, so any interest Valeant had in Allergan could not support the economic-interest defense. Had Valeant acted to protect its interest in B+L (the breaching company), the court observed that the defense would have applied. *Id.* Here, CVI expressly asserts that Mariano acted to protect **his interest in Patriot**, and Patriot is the allegedly breaching party. Compl. ¶ 201 (alleging Mariano sought to "continue to exert total control and dominion over Patriot as majority shareholder"). Accordingly, the economic interest defense applies under the clear standard articulated by *Bausch & Lomb*. 2016 WL 2622013 at *11 (holding the defense "applies if the alleged interferer acted to protect its interest *in the breaching party's business*; an interferer acting to protect *its own* direct interests, rather than its interest in the breaching party, may not raise the economic interest defense." (emphasis in original)).

Next, the Court relied in part on *Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.*, 887 F. Supp. 2d 459 (E.D.N.Y. 2012). But *Dell's* is nothing like the situation here. There, the defendants admittedly were not trying to protect their interests in the breaching party (Shoreline). Rather, the defendants sought to avoid "an outcome [that] would be financially ruinous" to them. *Id.* at 484. Thus, the defendants were trying to protect their own financial interests, not any interest that they may have had in Shoreline. The economic interest clearly does not apply in this situation. *Id.* ("[T]he defense is inapplicable because it only applies when the alleged interfering parties have acted to protect their **interest in the breaching party's business**— here, Shoreline's—not their own." (emphasis added)). This is nothing like what CVI has alleged Mariano did, which was allegedly acting to protect his majority stake in Patriot. Compl. ¶ 201.

Finally, the Court also relied in part on *Wells Fargo Bank, N.A. v. ADF Operating Corp.*, 855 N.Y.S.2d 68 (App. Div. 1st Dep't 2008). That case is distinguishable because the defendants'

wrongdoing was to sell their interest in the breaching party. *Id.* at 69 ("The economic interest defense is not applicable because plaintiff alleged that defendants were not acting to protect their financial interests in ADF LI when they sold their interests to a third party, but rather sold to profit themselves to the detriment of ADF LI."). As such, it was impossible for defendants to be protecting their interests in the breaching party (ADF LI); instead, they were divesting their interests. *Id.* at 68.

Under the above authority, Mariano is entitled to the economic-interest defense if he acted to protect his "interest *in the breaching party's business*," i.e., his interest in Patriot. *Bausch & Lomb*, 2016 WL 2622013, at *11 (emphasis in original); *see also White Plains Coat & Apron Co. v. Cintas Corp. (White Plains II)*, 8 N.Y.3d 422, 426 (2007) ("[A] defendant may raise the economic interest defense—that it acted to protect its own legal or financial stake in the breaching party's business"). But the Court previously suggested that "the phrase 'in the breaching party's business' is ambiguous," and ruled that the defense only applies where the defendant's and the breaching party's interests "are *aligned*," i.e., where the defendant "acts to protect the breaching party's business." *Hudson Bay III*, 2019 WL 1649983, at *16 (emphasis in original).

Respectfully, this view of the economic-interest defense, as advanced in *Hudson Bay III*, is foreclosed by *White Plains II*. There, the New York Court of Appeals set out the standard for the defense as quoted above and then approved of a number of applications of it, including "where defendant was the breaching party's creditor." 8 N.Y.3d at 426. While a creditor obviously wants to protect "its own legal or financial stake in" its debtor's business, *id.* at 383, the interests of a creditor and debtor are frequently not aligned, and a creditor is far more likely to act to protect its own interests than those of its debtor.

In recognizing that creditors may claim the economic-interest defense, *White Plains II*

favorably cited *Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 579 N.Y.S.2d 353 (App. Div. 1st Dep't 1992). There, the defendant bank "enforced its security agreement against the debtor," which was the breaching party. *Id.* at 354. The bank's actions caused the debtor to fail to make an oil delivery to the plaintiff. *Id.* The court held that the bank was protecting "its secured interest" in the debtor. *Id.* But by "rendering the debtor financially unable to meet its [delivery] obligations," the bank was certainly not protecting the debtor's interests, or showing any alignment with the debtor's interests. *Id.* Nonetheless, the court affirmed the dismissal of the tortious interference claim, and *White Plains II* cited *Ultramar Energy* as a proper application of the economic interest defense.

Other cases are consistent with *White Plains* and *Ultramar Energy* in holding that creditors, despite often having interests not aligned with breaching party debtors, are entitled to the economic interest defense. *See Abele Tractor & Equip. Co. v. Schaeffer*, 91 N.Y.S.3d 548, 551 (App. Div. 3d Dep't 2018) (applying economic interest defense to approve of bank's repossession of equipment from breaching party "to protect its own financial stake" even though the bank's actions prevented the breaching party from completing sale of equipment to the plaintiff); *Wilmington Tr. Co. v. Burger King Corp.*, 2005 WL 3199301, at *6 (N.Y. Sup. Ct. 2005) (citing *Ultramar Energy* and holding that to "the extent that Burger King acted to preserve its interest as creditor . . . , its actions were economically justified"); *Savage v. Galaxy Media & Mktg. Corp.*, 2012 WL 2681423, at *10 (S.D.N.Y. July 5, 2012) (holding that defendant lenders had "an interest in collecting on their debt" sufficient to assert the economic interest defense).

Based on the above, Mariano respectfully maintains that the restriction on the economic interest defense articulated by the Court in *Hudson Bay III* is inconsistent with New York law. As such, Mariano requests that the Court apply the plain language of the many cases addressing the

– 13 –

defense. Specifically, because Mariano was acting to protect **his interest in Patriot** (as alleged by CVI), and because CVI has failed to allege that Mariano acted maliciously, fraudulently, or illegally in procuring Patriot's breach, the tortious interference claim should be dismissed.

      **b.**      **As a former officer and director of Patriot, Mariano cannot be liable for tortiously interfering with Patriot's contract where there is no allegation that he acted with malice and had the intent to impair Hudson Bay's business.**

"A corporation's officer or director generally cannot be held liable under a theory of tortious interference for causing the corporation to breach a contract." *Solow v. Stone*, 994 F. Supp. 173, 181 (S.D.N.Y. 1998). To plead tortious inference against an officer or director, the plaintiff faces an "enhanced pleading requirement," and must show that "the acts complained of, whether or not beyond the scope of the defendant's corporate authority, were performed with malice and were calculated to impair the plaintiff's business for the personal profit of the defendant." *IMG Fragrance Brands*, 679 F. Supp. 2d at 408.

Mariano was the CEO and Chairman of the Board of Directors of Patriot. Compl. ¶ 1. And CVI sued him in that capacity. *Id.* ("CVII brings this action against Mariano, the former Chairman of the Board of Directors [and] former Chief Executive Officer"). Therefore, Mariano could only be liable for tortious interference with the warrants if he acted (1) with malice and (2) with the intent to impair CVI's business. CVI has not alleged either requirement, so dismissal is appropriate.

Relying on *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288 (S.D.N.Y. 2012), the Court rejected Mariano's corporate officer defense in the Hudson Bay Action. *Hudson Bay III*, 2019 WL 1649983, at \*15-16. But *Rockland Exposition* leaves no doubt that CVI has not adequately pled its tortious interference claim against Mariano. CVI must plead specific elements in order to avoid the application of the corporate officer defense:

Such claims are subject to a **heightened pleading standard**, which requires that a complaint "contain [ ] allegations that the acts of the corporate officers [or directors] were done with the motive for personal gain as distinguished from gain to their corporations," and that the acts were performed **with malice** and **calculated to impair the plaintiff's business** for the defendant's profit.

894 F. Supp. 2d at 338 (emphasis added). Since this is "a heightened pleading standard," CVI obviously bears the burden of properly pleading all elements. *Id.* But CVI has neither alleged that Mariano's "acts were performed with malice" nor that they were "calculated to impair [CVI's] business." *Id.* While CVI alleges in conclusory terms that Mariano acted "for his own personal, financial benefit and was not acting in any way for the benefit of Patriot," Compl. ¶ 200, that is not enough. Without the allegations required by the heightened pleading standard recognized by *IMG Fragrance Brands* and *Rockland Exposition*, dismissal is appropriate.

### c.    Mariano is not a stranger to the warrants.

"It is well established that only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract." *Koret, Inc. v. Christian Dior, S.A.*, 554 N.Y.S.2d 867, 869 (App. Div. 1st Dep't 1990). In other words, a defendant cannot tortiously interfere with a contract unless he is a "third party unrelated to the contract." *Solow*, 994 F. Supp. at 181.

Mariano is not a stranger to the warrants because the warrants were part of a larger transaction to which Mariano was a party. Indeed, in the Hudson Bay Action, the Court found that the SPA, REA, and warrants constitute a single agreement. *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc. (Hudson Bay I)*, 2016 WL 6906583, at *4 (S.D.N.Y. Nov. 21, 2016) ("[T]he Warrant itself is not independent of the SPA and other Transaction Documents"). Because Mariano was a party to the transaction at issue, rather than a stranger, he is entitled to dismissal of the tortious interference claim. *See Hallinan v. Republic Bank & Trust Co.*, 2006 WL 1495232, at *5 (S.D.N.Y. Jun. 1, 2006).

Some cases involving multiparty contracts, however, ease the stranger requirement where the tortious interference defendant has "rights and duties that are separate from those of the breaching party." *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 18 (2d Cir. 2014). Yet CVI's own pleading conclusively negates any argument that Mariano is a stranger to the warrants due to the multiparty nature of the transaction. Directly on point is *UBS Sec. LLC v. Highland Capital Mgmt., L.P.*, 927 N.Y.S.2d 59 (App. Div. 1st Dep't 2011).

*UBS Sec. LLC* recognized that "some courts have held that a party to a multilateral agreement can be found liable for tortious interference with the agreement . . . where the alleged tortfeasor has rights and duties that are separate from those of the breaching party." *Id.* at 66. But the court found the exception to the stranger requirement not applicable because "the complaint is thoroughly suffused with allegations that Highland was **essentially the alter ego** of the parties it induced to breach the agreements." *Id.* (emphasis added). The court's holding reflects a compelling rationale: a plaintiff cannot simultaneously allege that someone dominates an entity so much that he is able to force it to breach contracts but is also a stranger to that entity's contracts.

Like in *UBS Sec. LLC*, CVI's Complaint is "thoroughly suffused" with allegations of Mariano's domination of Patriot, and those allegations are directly related to the alleged tortious interference. Compl. ¶ 188 ("the Company — under the direct control of Mariano and at his behest — unjustifiably refused to deliver the shares when they came due"); *id.* ¶ 190 (Mariano "exerted dominion and control over Patriot and the Patriot Board to cause Patriot not to honor CVII's New Warrants"); *id.* ¶ 197 ("Mariano also compelled other members of the Patriot Board to follow his lead in refusing to honor the New Warrants since as majority shareholder of the Company, Mariano controlled the make-up of Patriot's Board.").[6] Under *UBS Sec. LLC*, CVI's allegations of

---

[6] *See also* Compl. ¶ 13 (Mariano "used his position as controlling shareholder of Patriot to extract money for himself that he used to support a lavish lifestyle"); *id.* ¶ 17 ("At Mariano's behest, Patriot

Mariano's domination and control of Patriot foreclose as a matter of law any argument that Mariano was a stranger to the warrants.

In the *Hudson Bay Action*, the Court rejected Mariano's argument based on *UBS Sec. LLC*. *Hudson Bay III*, 2019 WL 1649983, at *13 n.15. In doing so, it relied on *Island Two LLC v. Island One, Inc.*, 2013 WL 5380216, at *2 (S.D.N.Y. Sept. 26, 2013), but that case is readily distinguishable. First, the complaint there (unlike here) did "not conflate" the relevant parties. *Id.* Anyway, the test under *UBS Sec. LLC* is different: whether CVI has alleged Mariano is "essentially the alter ego of" Patriot. *UBS Sec. LLC*, 927 N.Y.S.2d at 66. CVI clearly has done so. Compl. ¶¶ 188, 190, 197, 198. Second, *Island Two* found that the defendant's "effort to assert alter ego status based on the allegations in the Complaint is contrary to law," as it was reverse veil-piercing. 2013 WL 5380216, at *2. *Island Two*, however, did not discuss *UBS Sec. LLC*, an earlier decision showing that it is not "contrary" to New York law to rely on a plaintiff's alter ego-like allegations to establish the not-a-stranger defense. And *Island Two* did not have the benefit of a later New York state court decision that cited *UBS Sec. LLC* favorably in this regard. *See New Media Holding Co., LLC v. Kagalovsky*, 985 N.Y.S.2d 216, 224 (App. Div. 1st Dep't 2014) (dismissing tortious interference claim and holding "defendants are correct in concluding that they cannot be simultaneously alter egos and tortious intervenors").

Because CVI effectively pled that Mariano is not a stranger to the warrants, the Court should follow *UBS Sec. LLC* to dismiss the tortious interference claim.

---

offered numerous excuses for refusing to honor the warrants and deliver shares owed to CVII."); *id.* ¶ 198 ("Mariano has a proven track record of using his leverage over the Patriot Board to force corporate actions with no ostensible purpose other than to benefit Mariano personally."); *id.* ¶ 228 ("Because of his position of control and authority, Mariano was able to and did, directly or indirectly, control the content of the statements made by Patriot.").

## **CONCLUSION**

Despite having the benefit of years of discovery in the Hudson Bay Action, CVI has not stated a cause of action against Mariano. Accordingly, CVI's Complaint should be dismissed—and with prejudice.

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that the foregoing document was filed with the Clerk of the Court using CM/ECF on June 3, 2019. I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF.

<u>*s/ Michael E. Dutko, Jr.*</u>
MICHAEL E. DUTKO, JR.
*Pro Hac Vice Application Filed*
<u>mdutko@conradscherer.com</u>