UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
: 
CVI INVESTMENTS, INC., : Case No. 1:19-cv-02960
:
                     Plaintiff, :
:
 -against- :
:
STEVEN M. MARIANO, :
:
                     Defendant. :
:
:
:
----------------------------------------------------------------x

## DEFENDANT STEVEN M. MARIANO'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Defendant Steven M. Mariano ("Mariano") hereby files this reply brief in support his motion to dismiss the Complaint.

Dated: July 15, 2019                    Respectfully submitted,

/s/ William R. Scherer                   **--and--**
WILLIAM R. SCHERER
*Admitted Pro Hac Vice*                 ERIC HAGER
wscherer@conradscherer.com        *Admitted Pro Hac Vice*
MICHAEL E. DUTKO, JR.             ehager@conradscherer.com
*Pro Hac Vice Application Filed*      CONRAD & SCHERER, LLP
mdutko@conradscherer.com         Edificio Officenter, Suite 304
CONRAD & SCHERER, LLP          Avenida Pampite S/N y Chimborazo -
633 South Federal Highway, 8th Floor   Cumbayá
Ft. Lauderdale, Florida 33301         Quito, Ecuador 179091
Phone: 954-462-5500                 Telephone: (954) 622-0461
Fax: 954-463-9244                    Quito: +(593) 2-601-4261
                                     Facsimile: (954) 463-9244

*Counsel for Defendant Steven M. Mariano*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

ARGUMENT .........................................................................................................................1

    I.     THE COURT SHOULD DISMISS THE TWO FRAUD CLAIMS ........................1

          a.     The terms of the SPA and REA bar CVI's fraud claims. ............................1

          b.     The fraud claims are barred because the alleged misrepresentations are not extraneous to the SPA and REA. .....................................................3

          c.     The fraud claims are not pled with the particularity required by Rule 9(b). ..............................................................................................................5

          d.     CVI's fraudulent inducement claim fails because it cannot rely on representations Mariano made to Patriot. ......................................................5

          e.     CVI's common-law fraud claim fails because Mariano had no disclosure duty. ...............................................................................................7

          f.     CVI's common-law fraud claim fails because puffery is not actionable fraud. ..............................................................................................................8

    II.    THE COURT SHOULD DISMISS THE CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT ..................................................................8

          a.     The economic-interest defense merits dismissal of the claim. ....................8

          b.     As a former officer and director of Patriot, Mariano cannot be liable for tortiously interfering with Patriot's contract where there is no allegation that he acted with malice and had the intent to impair Hudson Bay's business. .................................................................................9

          c.     Mariano is not a stranger to the warrants. ....................................................9

CONCLUSION .....................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) .................................................................................. 2, 3

*City of Roseville Employees' Ret. Sys. v. Nokia Corp.*,
  2011 WL 7158548 (S.D.N.Y. Sept. 6, 2011) ............................................................ 8

*DynCorp v. GTE Corp.*,
  215 F. Supp. 2d 308 (S.D.N.Y. 2002) ...................................................................... 4

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc. (Hudson Bay II)*,
  309 F. Supp. 3d 100 (S.D.N.Y. 2018) ...................................................................... 4

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc. (Hudson Bay III)*,
  2019 WL 1649983 (S.D.N.Y. Mar. 28, 2019) ...................................................... 2, 9

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
  679 F. Supp. 2d 395 (S.D.N.Y. 2009) ...................................................................... 9

*Kralic v. Helmsley*,
  294 A.D.2d 234 (1st Dep't 2002) ......................................................................... 8, 9

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
  244 F.R.D. 204 (S.D.N.Y. 2007) .............................................................................. 7

*New Media Holding Co., LLC v. Kagalovsky*,
  985 N.Y.S.2d 216 (App. Div. 1st Dep't 2014) ....................................................... 10

*Optima Media Grp. Ltd. v. Bloomberg L.P.*,
  2019 WL 1746107 (S.D.N.Y. Apr. 17, 2019) .......................................................... 5

*Solow v. Stone*,
  994 F. Supp. 173 (S.D.N.Y. 1998) ........................................................................... 9

*Torchlight Loan Servs., LLC v. Column Fin., Inc.*,
  2012 WL 3065929 (S.D.N.Y. July 25, 2012) ........................................................... 3

*UBS Sec. LLC v. Highland Capital Mgmt., L.P.*,
  927 N.Y.S.2d 59 (App. Div. 1st Dep't 2011) ......................................................... 10

*Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*,
  179 A.D.2d 592 (1st Dep't 1992) ............................................................................. 8

*White Plains Coat & Apron Co. v. Cintas Corp.*,
  8 N.Y.3d 422 (2007) ................................................................................................. 8

## ARGUMENT

I. **THE COURT SHOULD DISMISS THE TWO FRAUD CLAIMS**

   a. **The terms of the SPA and REA bar CVI's fraud claims.**

In Counts I and II, CVI's fraud claims turn on pre-transaction representations. *E.g.*, Compl. ¶ 204. But the terms of the SPA[1] and REA bar any fraud claims based on representations that predate the transaction. Section 9(e) of the SPA states that it, and the related documents, "contain the entire understanding of the parties solely with respect to the matters covered herein and therein." Section 8(f) of the REA contains a similar provision. Despite CVI's attempt to divert the Court's attention to other language from the same clauses, *see* Opp. at 14–15, these merger clauses bar claims based on representations not "covered" in the SPA and REA.

Even more germane to this action, however, is section 2(e) of the SPA: a no-reliance clause. The clause states that CVI "has, in connection with [CVI's] decision to purchase Securities, not relied upon any representations or other information (whether oral or written) other than as set forth in the representations and warranties of the Company [Patriot] and the Selling Stockholder [Mariano] contained herein and the information disclosed in the SEC Documents." By using such language in the SPA, the Court held in the *Hudson Bay Action* that "the parties manifested their intent to make the terms of the SPA the exclusive grounds upon which the Funds may be liable for transactions occurring during the SPA's negotiation." *Hudson Bay Master Fund Ltd. v. Patriot*

---

[1] *See* Dutko Decl., Exhs. 1–2. There are two pertinent declarations submitted by Michael E. Dutko, Jr., counsel for Mariano:

- "Dutko Decl." refers to the declaration attached to, and submitted with, the previously filed motion to dismiss [ECF No. 15]; and
- "Dutko Second Decl." refers to the declaration attached to, and submitted simultaneously with, this reply brief.

The SPA and REA were attached as Exhibits 1 and 2 to the Dutko Decl. [ECF No. 15].

*Nat'l, Inc. (Hudson Bay III)*, 2019 WL 1649983, at *8 (S.D.N.Y. Mar. 28, 2019). Applying that same logic, it necessarily follows then that the SPA contains "the exclusive grounds" upon which *Mariano* may be liable for *representations* occurring during the SPA's negotiation.

The no-reliance clause indisputably bars most of the alleged misrepresentations forming the basis of CVI's fraud claims. For instance, one of CVI's central allegations is that "Mariano misrepresented to CVII his own and Patriot's intent to comply with the terms of the revised deal." Compl. ¶ 8; *see also* Opp. at 11–12 ("CVII's fraud-based claims charge Mariano with making false and misleading statements and omissions . . . in direct communications with CVII where he feigned willingness to deliver his own shares to Patriot."). But no such statement is "set forth in the representations and warranties of the" SPA. *See* SPA § 2(e). As such, the no-reliance clause bars CVI's reliance as a matter of law. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007).

Recognizing this fatal flaw in its Complaint, CVI tries to escape the no-reliance clause it expressly agreed to by claiming to have relied on the SEC Documents. Opp. at 15. That gambit, however, fails. In mischaracterizing its own allegations in an attempt to circumvent the no-reliance clause, CVI cites paragraph 100 of the Complaint to claim the Back-to-Back Agreements "were filed with the SEC and thus are SEC Documents themselves." *Id.* First, that paragraph alleges nothing about the *original* back-to-back agreement; it addresses only the *amended* one. Compl. ¶ 100. Second, that paragraph merely alleges, "Patriot filed a Form 8-K on December 23, 2015 **reporting** . . . the amended stock back-to-back agreement." *Id.* There is no allegation that it was filed with the SEC.

Finally, CVI makes a tepid attempt to invoke the peculiar-knowledge exception, but the exception fails on both prongs. First, the disclaimer in the no-reliance clause is sufficiently specific

to the alleged misrepresentations. The disclaimer is explicitly tied to CVI's "decision to purchase Securities" of Patriot. SPA § 2(e). Thus, any statement tied to that decision—and all of the fraud alleged in the Complaint is related to the decision to buy Patriot stock—is covered by the disclaimer. Second, the alleged misrepresentations were not peculiarly within Mariano's knowledge. CVI argues "there was no way [it] could have known about . . . Mariano's encumbrance of his stock." Opp. at 17. CVI did not allege in the Complaint a complete lack of knowledge of Mariano's encumbrances; nor could it, considering the encumbrances were public knowledge. For example, in an October 5, 2015 SEC filing (just over two months before the PIPE transaction), Patriot disclosed that Mariano had pledged more than four million shares to secure obligations under credit agreements. *See* Dutko Second Decl., Exh. 1.[2] This is not a case where CVI could have learned about Mariano's encumbrances only with "extraordinary effort or great difficulty." Opp. at 17 n.7. Relevant information was in SEC filings, a source of public information on Patriot to which CVI repeatedly cites in its Complaint and brief. *E.g.*, Compl. ¶¶ 30–48; Opp. at 7–10. Accordingly, the Court should reject CVI's fact-based arguments (which neither are alleged in the Complaint, nor have any basis in fact) and find the peculiar-knowledge exception does not apply.

      **b.**       **The fraud claims are barred because the alleged misrepresentations are not extraneous to the SPA and REA.**

Next, CVI advances a straw-man argument: Its fraud claims are not duplicative of a (non-existent) breach of contract claim. Opp. at 10–12. Of course, this is not what Mariano has argued. But even so, the Court should first recognize a number of points: CVI does not dispute that, in the

---

[2] As explained in the motion to dismiss, *see* Mot. at 2 n.2 [ECF No. 14], the Court may properly refer to SEC filings because of CVI's reference to them in its Complaint. *See Torchlight Loan Servs., LLC v. Column Fin., Inc.*, 2012 WL 3065929, at *12 (S.D.N.Y. July 25, 2012).

*Hudson Bay Action*, the Court held that misrepresentations must be "extraneous to the contract and involve a duty separate from or in addition to that imposed by the contract." *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc. (Hudson Bay II)*, 309 F. Supp. 3d 100, 115 (S.D.N.Y. 2018). Nor does CVI dispute that the Court dismissed Mariano's fraud counterclaim in the *Hudson Bay Action* for that reason. Nevertheless, CVI insists the requirement that misrepresentations be extraneous to the SPA and REA does not apply here because "CVII has no breach of contract claim against Mariano." Opp. at 11–12. This defeats a position never argued by Mariano; and it is wrong, as a matter of law.

Relying on *Hudson Bay II*, Mariano demonstrated that "the alleged misrepresentations and omissions are expressly addressed by the Transaction Documents." 309 F. Supp. 3d at 115. CVI's opposition brief merely proves Mariano's point. CVI openly acknowledges its "fraud claim rests in large part on the very SEC Documents that Section 2(e) expressly allowed CVII to rely upon." Opp. at 15; *id.* at 11 ("CVII's fraud-based claims charge Mariano with making false and misleading statements and omissions in SEC filings"). So the misrepresentations are not extraneous to the agreements; they were explicitly referenced in them. *Hudson Bay II*, 309 F. Supp. 3d at 115 ("[I]t is not sufficient that the alleged misrepresentations are about then-present facts; rather, they also must be extraneous to the contract and involve a duty separate from or in addition to that imposed by the contract."); *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 325 (S.D.N.Y. 2002).

Sensing the weakness in its argument, CVI implores the Court to take as true that "Mariano's role as a signatory to the SPA and REA has almost no relevance to CVII's fraud counts." Opp. at 12. This is another example of CVI's brief contradicting its Complaint, where it alleged "**Mariano assured CVII through the SPA and REA** that CVII could rely on Patriot's SEC filings in completing the transaction with Patriot and Mariano." Compl. ¶ 15 (emphasis

added). That allegation conclusively demonstrates that Mariano's representations concerning the SEC filings were not extraneous to the SPA and REA.

   c. **The fraud claims are not pled with the particularity required by Rule 9(b).**

CVI's response to Mariano's particularity argument is yet another example of an argument by CVI that "rests on mischaracterizations of the Complaint." Opp. at 19. CVI argues that paragraphs 71–78, 88–90, 93, and 97 of the Complaint "identify[] discussions between Mariano and CVII representative Martin Kobinger." *Id.* at 18. Yet Kobinger is mentioned only once in the Complaint. *See* Compl. ¶ 71. Regarding the remaining paragraphs in CVI's laundry list, the Complaint fails to identify specifically *who* from CVI was involved in the communications. *E.g.*, Compl. ¶ 89 ("[A]fter the closing, Mariano personally communicated with CVII to renegotiate the deal").

CVI's failure to plead particularity under Rule 9(b) merits dismissal. Though CVI bids for leniency, the Second Circuit has "instructed" district courts to apply Rule 9(b) "rigorously." *Optima Media Grp. Ltd. v. Bloomberg L.P.*, 2019 WL 1746107, at *5 (S.D.N.Y. Apr. 17, 2019). And CVI cannot rely on its opposition brief to add factual detail in order to overcome this pleading shortcoming. *Id.* at *4 (recognizing the court would not "credit" a party's "reliance in its briefing on a fact not in its pleadings").

   d. **CVI's fraudulent inducement claim fails because it cannot rely on representations Mariano made to Patriot.**

Mariano demonstrated in the motion to dismiss how a significant portion of CVI's fraudulent inducement claim (Count I) is premised on Mariano's alleged representation concerning his ownership of unencumbered shares. The problem for CVI arises because it alleges Mariano made that representation in the Amended Back-to-Back Agreement—an agreement between Mariano and Patriot to which CVI was not a party. Compl. ¶¶ 93-94. Mariano did not make any

representations to CVI in the that agreement. Trying to salvage Count I, CVI now claims Mariano made the same representation about his unencumbered shares "*directly*" to CVI. Opp. at 19-20 (emphasis in original). This is yet *another* instance of CVI trying to use a brief to re-write its Complaint.

The primary allegation CVI cites says nothing about unencumbered shares. *See* Compl. ¶ 89. The other paragraphs cited relate to representations by Mariano concerning his shares but there are no details concerning those representations. *See* Compl. ¶¶ 97, 208. Under a fair reading of the Complaint, a reader would understand these representations were made in the Amended Back-to-Back Agreement, not separately to CVI. Compl. ¶¶ 93–94 (alleging Mariano "fraudulently misrepresented that he had sufficient unencumbered stock to satisfy his obligations to deliver shares owed to CVII under the warrants" and citing Section 4.1 of the Amended Back-to-Back Agreement). Now facing dismissal, CVI surely wants the Court to believe Mariano made representations concerning his unencumbered shares directly to CVI in some manner separate from the Amended Back-to-Back Agreement, but that is not what CVI alleged in the Complaint.

CVI also makes the feeble argument that Mariano intended the representations in the Amended Back-to-Back Agreement to be conveyed to CVI. Opp. at 20. For instance, CVI relies on Patriot's disclosure of the "terms of the initial transaction—including the back-to-back agreement" in a press release. *Id.* The press release, however, does not even mention the Back-to-Back Agreement by name. *See* Dutko Second Decl., Exh. 2. Further, the press release says nothing about the issue CVI claims was fraudulent, *i.e.*, that Mariano had sufficient unencumbered shares to deliver to Patriot upon exercise of the warrants. Instead, it merely states that Mariano and Patriot agreed that Patriot would "repurchase a number of shares of its common stock owned by the [Patriot] equal to 60% of the shares to be issued upon the exercise of the warrants." *Id.*

Finally, in his motion to dismiss, Mariano maintained that CVI cannot rely on representations from the Amended Back-to-Back Agreement because it contains a no-third-party-beneficiary clause. Mot. at 7; *see also* Dutko Decl., Exh. 3, at § 5.6. In its opposition brief, CVI said nothing in response—deafening silence, tacitly acknowledging that, as a matter of law, Mariano did not intend to convey any representations from that agreement to CVI.

    **e.**    **CVI's common-law fraud claim fails because Mariano had no disclosure duty.**

CVI fails to advance any serious response to Mariano's argument that he did not owe CVI a disclosure duty. First, it argues Mariano had a duty to disclose "the precarious nature of Patriot's finances." Opp. at 21. The law does not impose such a vague obligation. Next, CVI cites two legal bases for a disclosure duty, but neither helps it here. As to partial or ambiguous statements, CVI refers to statements in the SEC filings and Back-to-Back Agreements. But for the reasons explained in Parts I(b) and I(d) above, the statements contained in those documents cannot form the basis for a fraud claim here. CVI's argument as to Mariano's superior knowledge gets it no further. CVI argues Mariano has superior knowledge of his "intention to breach the amended back-to-back agreement and prevent Patriot from performing under the warrants." Opp. at 22. If a defendant's inner thoughts amounted to the type of superior knowledge that triggers a duty of disclosure, there would be virtually no case where the disclosure duty does not exist.

Finally, despite the foregoing unavailing arguments, CVI's true position is found at the end of page 21 and onto page 22 of its opposition brief: That it does not have to allege why Mariano had a duty of disclosure. Opp. at 21. But, because that duty is an element of a claim for fraud by omission, *see Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007), CVI has failed to state a claim for this reason alone. Not only is CVI compelled to allege how and why Mariano had a duty of disclosure, failure to do so is grounds for dismissal.

### f. CVI's common-law fraud claim fails because puffery is not actionable fraud.

CVI's common-law fraud claim (Count II) is based largely on puffery, such as where it alleges that Mariano misrepresented Patriot's financial outlook by making "rosy financial projections." Compl. ¶ 103; *see also id.* ¶ 132. Oddly, CVI doubles down on the "rosy" language in its opposition brief. Opp. at 23 ("the Complaint generally described Patriot's projections as 'rosy'"). And it all but admits that its allegations concerning Patriot's projections lacked specificity. *Id.* at 23 n.9. Such allegations do not state a cause of action for fraud. *See City of Roseville Emps.' Ret. Sys. v. Nokia Corp.*, 2011 WL 7158548, at *6 (S.D.N.Y. Sept. 6, 2011) ("[T]hese statements are insufficient because Plaintiff essentially accuses Defendants of offering too rosy a view of Nokia's future D & S business.").

## II. THE COURT SHOULD DISMISS THE CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT

### a. The economic-interest defense merits dismissal of the claim.

In the motion to dismiss, Mariano cited to two New York cases that stand for the proposition that "Mariano is entitled to the economic-interest defense if he acted to protect his interest *in the breaching party's business*, i.e., his interest in Patriot." Mot. at 12; *see also White Plains Coat & Apron Co. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007); *Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 179 A.D.2d 592 (1st Dep't 1992). CVI responds in its opposition brief that these cases are "irrelevant" because Mariano was not a creditor of Patriot. Opp. at 5. CVI tacitly—if not expressly—argues that there is one test for creditors, and one test for all other types of alleged interferers. Without supporting case law, the Court should reject CVI's invitation to impose such a limitation where New York cases have not done so.

CVI then relies on *Kralic v. Helmsley*, 294 A.D.2d 234, 235 (1st Dep't 2002), in arguing that Mariano is not entitled to the economic-interest doctrine. Opp. at 6. But, in *Kralic*, there is

nothing suggesting that the defendant acted to protect his interest in the breaching party, i.e., his employer. *Id.* Rather, he was acting in his own interests and in the interest of another entity he controlled. *Id.* Because the defendant was *not* acting to protect his *interest in the brokerage firm (i.e., the breaching party)*, the economic interest defense could not be applicable (even if it was raised).

> **b.    As a former officer and director of Patriot, Mariano cannot be liable for tortiously interfering with Patriot's contract where there is no allegation that he acted with malice and had the intent to impair Hudson Bay's business.**

Despite CVI's insistence to the contrary, *see* Opp. at 7, as a former officer and director of Patriot, Mariano cannot be liable for tortiously interfering with Patriot's contract where there is no allegation that he acted with malice and had the intent to impair Hudson Bay's business. CVI casually and conveniently omits reference to well-established caselaw cited to by Mariano in the motion to dismiss. *See* Mot. at 14; *Solow v. Stone*, 994 F. Supp. 173, 181 (S.D.N.Y. 1998); *see also IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 406 (S.D.N.Y. 2009) (recognizing the "enhanced pleading requirement" for stating a tortious interference claim against officers or directors).

> **c.    Mariano is not a stranger to the warrants.**

In the motion to dismiss, Mariano candidly acknowledged that, in the *Hudson Bay Action*, the Court rejected Mariano's argument that he was not a stranger to the warrants based on New York caselaw. But CVI posits that the Court "fully analyzed" that law. Opp. at 3. Mariano disagrees. The Court actually relegated this argument to a footnote. *Hudson Bay III*, 2019 WL 1649983, at *13 n.15.

CVI's effort to distinguish the controlling law is superficial, and its argument resorts to distortion by claiming Mariano argues that CVI "alleges that Mariano was Patriot's 'alter ego.'"

Opp. at 3. Mariano does not maintain—and need not show—that CVI has alleged Mariano was actually Patriot's alter ego. Rather, under *UBS Securities LLC v. Highland Capital Management, L.P.*, 86 A.D.3d 469, 477 (1st Dep't 2011), all that is necessary is that CVI alleged Mariano "was essentially the alter ego" of Patriot. There can be no reasonable dispute that, like in *UBS Securities*, CVI's Complaint is "thoroughly suffused," *id.*, with allegations of Mariano's domination of Patriot. *See* Compl. ¶ 190 (Mariano "exerted dominion and control over Patriot and the Patriot Board to cause Patriot not to honor CVII's New Warrants"); *see also id.* ¶¶ 13, 17, 188, 197–198, 228. While CVI attempts to recast its allegations as Mariano merely "exert[ing] improper influence over Patriot board members," Opp. at 4, the plain language of the Complaint goes much further, alleging that Mariano dominated and controlled Patriot with respect to its decision not to honor the warrants.

Because CVI alleges Mariano was essentially the alter ego of Patriot, the Court should follow *UBS Securities* to find that Mariano was not a stranger to the warrants. *See also New Media Holding Co., LLC v. Kagalovsky*, 118 A.D.3d 68, 78–80 (1st Dep't 2014) (citing *UBS Sec. LLC*, 86 A.D.3d at 476–77) (dismissing tortious interference claim and holding "defendants are correct in concluding that they cannot be simultaneously alter egos and tortious intervenors").[3]

## CONCLUSION

For the reasons above and in the motion to dismiss, the Court should dismiss CVI's Complaint with prejudice.

---

[3] Contrary to CVI's suggestion, Opp. at 4 n.1, the test from *UBS Securities* has not been limited to privately held entities, and the Court should reject CVI's invitation to invent such a restriction.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was filed with the Clerk of the Court using CM/ECF on July 15, 2019. I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF.

*s/ Michael E. Dutko, Jr.*
MICHAEL E. DUTKO, JR.
*Pro Hac Vice Application Filed*
mdutko@conradscherer.com