USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: DEC 2 0 2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
CVI INVESTMENTS, INC.,

                Plaintiff,

-against-

STEVEN M. MARIANO,

                Defendant.
------------------------------------- x

MEMORANDUM DECISION
AND ORDER

19 Civ. 2960 (GBD) (SDA)

GEORGE B. DANIELS, United States District Judge:

Plaintiff CVI Investments, Inc. ("CVI") brings this action against Defendant Steven M. Mariano, asserting claims of fraudulent inducement, fraud, and tortious interference in connection with a private investment in public equity ("PIPE") transaction. (Compl., ECF No. 1.) Mariano moves to dismiss CVI's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def. Steven M. Mariano's Notice of Mot. to Dismiss Compl., ECF No. 13.) Mariano's motion to dismiss is DENIED as to the fraudulent inducement and tortious interference claims, but GRANTED as to the fraud claim.

## I.    FACTUAL BACKGROUND

This action is related to *Hudson Bay Master Fund Ltd. v. Mariano*, No. 16 Civ. 2767 (GBD) (the "Hudson Bay Action"), and *CVI Investments, Inc. v. Patriot National, Inc.*, No. 16 Civ. 2787 (GBD) (the "Patriot Action"), both of which involve the same underlying PIPE transaction at issue here.[1] Mariano is the former Chairman of the Board of Directors and Chief Executive Officer of non-party Patriot National, Inc. ("Patriot"). (Compl. ¶ 1.) CVI and non-party Hudson Bay Master Fund Ltd. ("Hudson Bay") are two of three investment funds that invested in Patriot shares through

---

[1] Citations to "*Hudson Bay*" refer to documents filed in the Hudson Bay Action. Citations to "*Patriot*" refer to documents filed in the Patriot Action.

the PIPE transaction, pursuant to the same Securities Purchase Agreement (the "SPA"). (*See id.* ¶ 57; Def. Steven M. Mariano's Mem. of Law in Supp. of Mot. to Dismiss Compl. ("Def.'s Mem."), Ex. 1 ("SPA"), ECF No. 14-1.)

### A. The Pipe Transaction and Related Agreements.

CVI entered into the SPA with Mariano and Patriot on December 13, 2015, agreeing to invest $22.5 million in Patriot in exchange for restricted, unregistered shares of Patriot's stock, as well as two series of warrants—the Series A and Series B warrants—to purchase additional shares at a later date. (Compl. ¶¶ 2, 57.) Under the deal, Mariano received $13.5 million of CVI's investment. (*Id.* ¶¶ 2, 58.) The SPA included a merger clause, stating that the SPA and other transaction documents "supersede all other prior oral or written agreements between [CVI], [Mariano], [and Patriot]" and "contain the entire understanding of the parties" with respect to the matters covered in the SPA. (SPA § 9(e).) The SPA also included a non-reliance clause, providing that CVI "has, in connection with [its] decision to purchase Securities, not relied upon any representations or other information (whether oral or written) other than as set forth in the representations and warranties of [Patriot] and [Mariano] contained herein and the information disclosed in the SEC Documents." (SPA § 2(e).)

Patriot's stock price dropped after the SPA was publicly announced, prompting Mariano to renegotiate the SPA with CVI. (Compl. ¶ 3.) As a result, on December 23, 2015, the parties entered into a Rescission and Exchange Agreement (the "REA") that rescinded CVI's purchase of restricted stock from Patriot but maintained its purchase of restricted stock from Mariano, permitting Mariano to keep the $13.5 million that CVI had paid him in connection with the original investment. (*Id.* ¶ 4; Def.'s Mem., Ex. 2 ("REA"), ECF No. 14-2.) Section 8(f) of the REA stated that the REA "supersede[s] all other prior oral or written agreements among [CVI], [Patriot], their

affiliates and persons acting on their behalf with respect to the matters discussed herein and therein." (REA § 8(f).)

The REA amended the terms of the original warrants issued by Patriot. Specifically, the new Series A warrant entitled CVI to purchase more shares at a lower price than the original Series A warrant. (Compl. ¶¶ 61, 81.) The new Series B warrant, like the original Series B warrant, allowed CVI to purchase a certain number of additional shares at a nominal exercise price of $0.01 per share if Patriot's stock price declined during a specified period. (*See id.* ¶¶ 62, 82.) However, it extended the pricing period for calculating how many additional shares CVI could claim for that nominal exercise price. (*See id.*)

Mariano and Patriot also executed separate agreements that required Mariano to deliver certain shares to Patriot in connection with the SPA and REA. When executing the SPA, Mariano and Patriot entered into a Stock Back-to-Back Agreement, which provided that Mariano would contribute sixty percent of any shares that Patriot issued pursuant to the original warrants. (*Id.* ¶ 59.) When the SPA was amended by the REA, they executed an Amended and Restated Stock Back-to-Back Agreement, which required Mariano to provide Patriot with 100 percent, as opposed to sixty percent, of any shares issued pursuant to the new warrants. (*Id.* ¶ 6.)

### B. CVI's Exercise of the Warrants and Suits Against Patriot and Mariano

On April 5, 2016, CVI submitted an exercise notice under the new Series B warrant for 250,000 shares. (*Id.* ¶ 172.) In response, Patriot's counsel sent CVI a letter stating that Patriot would not honor the exercise notice at that time, due to a purported investigation into the transaction by the Financial Industry Regulatory Authority. (*Id.* ¶¶ 173, 175.) CVI commenced the Patriot Action on April 14, 2016, suing Patriot for breach of contract. (*Id.* ¶ 176.) On August

3

1, 2016, CVI submitted an additional exercise notice to Patriot, this time under the new Series A warrant for 100,000 shares. (*Id.* ¶ 181.) Patriot again refused to honor the warrant. (*Id.* ¶ 182.)

CVI commenced this action on April 3, 2019, asserting claims against Mariano for fraud, fraudulent inducement, and tortious interference. (*Id.* ¶¶ 203–41.) According to CVI, Mariano committed fraud and fraudulently induced CVI to invest in the PIPE transaction by making misrepresentations and omissions about (1) Patriot's precarious financial condition, (2) Mariano's failure to reserve sufficient unencumbered shares of Patriot stock, and (3) Mariano's intent not to deliver the shares to Patriot upon CVI's exercise of the warrants. (*Id.* ¶¶ 203–31.) CVI bases its fraud and fraudulent inducement claims on statements that Mariano allegedly made in Patriot's filings with the SEC, the Amended and Restated Stock Back-to-Back Agreement, and direct communications with CVI. (*See id.* ¶¶ 1, 93–98.) The complaint further alleges that Mariano tortiously interfered with Patriot's obligations under the new warrants by not delivering shares to Patriot as required under the Amended and Restated Stock Back-to-Back Agreement, which in turn prevented Patriot from delivering those shares to CVI pursuant to the warrants. (*Id.* ¶ 235.)

## C. This Court's Previous Rulings.

Two of this Court's previous rulings are relevant here: (1) its February 14, 2018 decision in the Hudson Bay Action on Hudson Bay's motion to dismiss counterclaims filed by Mariano (the "February 2018 Decision"), (February 2018 Decision, *Hudson Bay*, ECF No. 291), and (2) its March 28, 2019 decision in both the Hudson Bay Action and the Patriot Action on the parties' cross-motions for summary judgment (the "March 2019 Decision"), (March 2019 Decision, *Hudson Bay*, ECF No. 334; March 2019 Decision, *Patriot Action*, ECF No. 201).

In its February 2018 Decision, this Court dismissed Mariano's fraudulent inducement counterclaim against Hudson Bay as duplicative of his breach of contract counterclaim. (February

4

2018 Decision, *Hudson Bay*, at 14–15.) Mariano asserted that Hudson Bay fraudulently induced Mariano to enter the SPA and REA by failing to disclose its intention to borrow Patriot shares before the SPA was executed, and to short-sell such shares as soon as the SPA was announced. (*Id.* at 14.) Mariano further alleged that Hudson Bay then breached the relevant agreements by engaging in such borrowing and short-selling activities. (*Id.* at 10–11.) Accepting all allegations as true, as is required on a 12(b)(6) motion to dismiss, this Court found that Mariano sufficiently alleged a breach of contract counterclaim against Hudson Bay. (*Id.* at 12.) However, it dismissed Mariano's fraudulent inducement counterclaim on the basis that it stems directly from his breach of contract counterclaim. (*Id.* at 14–15.)

Subsequently, in its March 2019 Decision, this Court granted CVI's and Hudson Bay's motions for summary judgment on their breach of contract claims against Patriot, denied Patriot's motion for summary judgment on its breach of contract claims against CVI and Hudson Bay, and denied Hudson Bay's and Mariano's cross-motions for summary judgment on Hudson Bay's tortious interference claim against Mariano. (March 2019 Decision, *Hudson Bay*, at 2–3; March 2019 Decision, *Patriot*, at 2–3.) With respect to the breach of contract claims, this Court found, *inter alia*, that CVI and Hudson Bay did not breach their non-disclosure agreements with Patriot (the "NDAs") because the NDAs was superseded by the SPA pursuant to the SPA's merger clause. (March 2019 Decision, *Hudson Bay*, at 14–16; March 2019 Decision, *Patriot*, at 14–16.) As to Hudson Bay's tortious interference claim—alleging that Mariano tortiously interfered with Hudson Bay's rights under the new warrants by failing to deliver his shares to Patriot upon Hudson Bay's exercise of its warrants—this Court denied both parties' motions, finding a genuine issue of

5

material fact as to the basis for Patriot's decision not to honor the warrants. (March 2019 Decision, *Hudson Bay*, at 38; March 2019 Decision, *Patriot*, at 38.)

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Failure to State a Claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).[2]

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

---

[2] "In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

6

### B. Rule 9(b) Heightened Pleading Standard.

In addition to meeting the requirements of Rule 12(b)(6), a plaintiff alleging fraud must also satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires such a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To meet this standard, "a complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Wood ex rel. U.S. v. Applied Research Assocs., Inc.*, 328 Fed. Appx. 744, 747 (2d Cir. 2009) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). In other words, a plaintiff alleging a cause of action sounding in fraud must set forth with sufficient particularity the "who, what, when, where[,] and how of the alleged fraud." *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014) (citation omitted).

### III. CVI SUFFICIENTLY ALLEGES A FRAUDULENT INDUCEMENT CLAIM

A plaintiff asserting a claim for fraudulent inducement must allege that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415–16 (2d Cir. 2006) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996)).

### A. The SPA's and REA's Non-Reliance and Merger Clauses Do Not Bar CVI's Fraudulent Inducement Claim.

Mariano moves to dismiss CVI's fraudulent inducement claim, arguing, *inter alia*, that it is based on pre-transaction representations and is therefore barred by the SPA and REA, this Court's March 2019 Decision, and the Second Circuit's decision in *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007). (Def's Mem. at 1–5.) In particular, Mariano points

to the SPA's non-reliance clause, (*id.* at 2), as well as the *ATSI* decision in which the Second Circuit held that a "plaintiff cannot establish reasonable reliance on [a] misrepresentation" where the plaintiff "is a sophisticated investor and an integrated agreement between the parties does not include the misrepresentation at issue," (*id.* at 3 (quoting *ATSI*, 493 F.3d at 105)). Mariano also refers to the SPA's and REA's merger clauses and this Court's March 2019 Decision, which held that Patriot could not maintain a claim against CVI or Hudson Bay for breach of the NDAs because the NDAs, like all other prior agreements, were superseded by the SPA pursuant to the SPA's merger clause. (*Id.* at 2–3.) According to Mariano, these provisions in the SPA and REA, this Court's interpretation of the merger clause in its March 2019 Decision, and the *ATSI* decision bar any fraud claims based on representations that Mariano made prior to the execution of the SPA; rather, the SPA contains the exclusive grounds upon which he may be liable. (*Id.* at 3.)

Contrary to Mariano's assertions, CVI sufficiently alleges a fraudulent inducement claim that is not barred by the agreements, this Court's previous rulings, nor Second Circuit precedent.

As an initial matter, the SPA's non-reliance clause expressly carves out an exception for SEC filings, which, according to CVI, contain some of the misrepresentations and omissions that form the basis of its fraudulent inducement claim. The clause provides, in pertinent part, that CVI "has, in connection with [its] decision to purchase Securities, not relied upon any representations or other information (whether oral or written) other than as set forth in the representations and warranties of [Patriot] and [Mariano] contained herein and *the information disclosed in the SEC Documents.*" (SPA § 2(e); REA § 2(a)(ix) (amending SPA's non-reliance clause).) As such, Mariano's reliance on the Second Circuit's decision in *ATSI* is misplaced, because the agreement there carved out no comparable exception, and instead stated that "[t]here are no restrictions,

8

promises, warranties, or undertakings, other than those set forth or referred to herein." *ATSI*, 493 F.3d at 95.

The SPA's and REA's merger clauses similarly do not preclude CVI from asserting its fraudulent inducement claim against Mariano. Section 9(e) of the SPA states that the SPA and other transactions documents "supersede all other *prior oral or written agreements* between [CVI], [Mariano], [and Patriot]" and "contain the entire understanding of the parties" with respect to the matters covered in the SPA. (SPA § 9(e) (emphasis added).) Section 8(f) of the REA states that the REA "supersede[s] all other *prior oral or written agreements* among [CVI], [Patriot], their affiliates and persons acting on their behalf with respect to the matters discussed herein and therein." (SPA § 8(f) (emphasis added).) As CVI correctly notes, the SEC filings that form the basis of its fraudulent inducement claim are not "prior oral or written agreements" barred by these merger clauses. (Pl. CVI Investment, Inc.'s Opp'n to Def. Steven M. Mariano's Mot. to Dismiss the Compl. ("Pl.'s Opp'n"), ECF No. 23, at 14.) Indeed, the SEC filings are not agreements at all. In contrast, the NDAs at issue in this Court's March 2019 Decision were agreements executed two weeks before the SPA, and were therefore superseded pursuant to the SPA's merger clause.

## B. CVI's Fraudulent Inducement Claim Is Based on Misrepresentations Extraneous to the SPA and REA.

Mariano also argues that CVI fails to allege misrepresentations that are extraneous to the SPA and REA. (Def.'s Mem. at 3–5.) He points to this Court's February 2018 Decision in which this Court dismissed Mariano's fraudulent inducement claim against Hudson Bay as duplicative of his breach of contract claim. Mariano contends that "[t]o be consistent, CVI[I]'s fraud claims deserve the same fate," given that all of Mariano's alleged misrepresentations are "expressly addressed by" or "explicitly contained in" the SPA and REA. (*Id.* at 4.)

9

Mariano's arguments are without merit. In this Court's February 2018 Decision, Mariano's fraudulent inducement claim against Hudson Bay was dismissed because it was a re-styling of his breach of contract claim. Mariano based his fraudulent inducement claim on Hudson Bay's alleged failures to disclose (1) its "then-present intention to begin borrowing Patriot shares immediately upon signing [its] NDA[]"; (2) that it "had borrowed millions of shares of Patriot stock in violation of the NDA[]"; and (3) "information regarding [its] own conduct in contributing to the stock's decline." (Mem. of Law in Opp'n to Pls.' Mot. to Dismiss Patriot National's Countercls., *Hudson Bay Action*, ECF No. 162, at 17.) Because these alleged misrepresentations and omissions were expressly addressed by the agreements and related transaction documents, and stemmed directly from his breach of contract claim, Mariano's fraudulent inducement claim was dismissed as duplicative.

Here, CVI asserts no breach of contract claim against Mariano because, as CVI argues, Mariano "did not make false representations or breach obligations *he owed to CVI[]* in the SPA or other transaction documents." (Pl.'s Opp'n at 11.) Rather than basing its fraudulent inducement claim on any representations that Mariano made in the SPA or REA, CVI's claim arises from alleged misrepresentations and omissions that are extraneous to the contact, including those that Mariano allegedly made in SEC filings. Accordingly, the February 2018 Decision does not bar CVI's claim here.

Drawing all inferences in CVI's favor, the complaint sufficiently alleges that Patriot's SEC filings—which Mariano, as an officer of Patriot, either signed or authorized—included false and misleading statements about Patriot's financial performance and outlook, and that such statements induced CVI to invest in the PIPE transaction. (*See* Compl. ¶¶ 131–56.)

## IV. CVI'S FRAUD CLAIM IS DUPLICATIVE OF ITS FRAUDULENT INDUCEMENT CLAIM

CVI also asserts a separate claim for fraud. To state a claim for fraud that is distinct from its claim for fraudulent inducement, CVI must allege some false representation other than those that allegedly induced CVI into entering the SPA and REA in the first place. The complaint, however, is devoid of allegations of any fraud committed once the parties executed the agreements. Indeed, CVI conceded at oral argument that its fraud and fraudulent inducement claims "overlap," (Tr. of Oral Arg. dated Aug. 7, 2019 at 14:14–18), that the fraud claim "may not be separate from fraudulent inducement [and] may just be fraudulent inducement," (*id.* at 16:4–6), and that there is no way "to articulate the separate . . . fraud claim, other than [what CVI] relied upon . . . by entering into the agreement[s]," (*id.* at 18:11–14). Because CVI cannot allege a different set of facts or legal theories giving rise to a separate fraud claim from those giving rise to its fraudulent inducement claim, its fraud claim is dismissed as duplicative.

## V. THE MARCH 2019 DECISION IS DISPOSITIVE OF CVI'S TORTIOUS INTERFERENCE CLAIM

As to CVI's tortious interference claim, this Court's March 2019 Decision in the Hudson Bay Action is dispositive, given that (1) this action concerns that same PIPE transaction at issue in the Hudson Bay Action; (2) CVI, similar to Hudson Bay, was an investor in that transaction; (3) CVI, like Hudson Bay, was a party to the same SPA and a similar REA; and (4) CVI's tortious interference claim here is based on the same legal theories as Hudson Bay's claim in the Hudson Bay Action. Accordingly, consistent with this Court's previous finding that a genuine issue of material facts exists as to the basis for Patriot's decision not to honor the new warrants, Mariano's motion to dismiss CVI's tortious interference claim is denied.

## VI. CONCLUSION

Mariano's motion to dismiss, (ECF No. 13), is DENIED as to CVI's fraudulent inducement and tortious interferences claims and GRANTED as to CVI's fraud claim. The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
      December 20, 2019

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge